**STATE of Utah, Plaintiff and Appellee,**

v.

**Joseph Finano MOYA, Defendant and Appellant.**

Nos. 890608–CA, 900445–CA.

Court of Appeals of Utah.

July 17, 1991.

---

James A. Valdez and Ronald S. Fujino (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Judith S.H. Atherton, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Joseph F. Moya appeals from an order revoking probation and reimposing a sentence of zero to five years in the Utah State Prison. Defendant also appeals from an order for correction of a clerical error, granted pursuant to Utah R.Civ.P. 60(a), revising the wording of his original sentence. We reverse the order revoking probation and vacate the order revising defendant's sentence.

## FACTS

The facts critical to resolution of this appeal are unusually convoluted. The procedural history of the case is tangled with defendant's turnstile entries and exits from Utah, New Mexico, and Arizona, in whose jails and prisons he has been a frequent resident over the past several years. The state concedes its position on appeal "has problems" and would welcome a determination of mootness and dismissal of the appeal. However, the potential for further mischief resulting from the sentence imposed upon defendant denies us that luxury.[1]

On August 10, 1984, defendant pled guilty to a charge of burglary, a third-degree felony. On September 13, 1984, he was sentenced to a suspended prison term of zero to five years, and an eighteen-month probation was imposed. The eighteen-month period following imposition of sentence expired on March 13, 1986. The intent and effect of that probation order poses the crucial question in this appeal. Four days after the order was entered, the court ordered defendant's extradition to New Mexico to face pending criminal charges. In October, defendant was escorted to New Mexico, where he remained in custody for several months, until the New Mexico charges were dismissed.

On January 9, 1985, while defendant was still in custody in New Mexico, the Utah Office of Adult Probation and Parole (AP & P) filed an incident report with the court, informing the court that defendant failed to report to his probation officer. Unaware of defendant's excellent excuse for not meeting with his probation officer in

---

1. Because defendant remains on parole from the Utah State Prison, any further violation might constitute grounds for an immediate return to prison. Defendant's position is that he should never have been imprisoned so he could be paroled, since his probation had expired long before it was purportedly revoked.

Although the state suggested at oral argument that defendant is presently a fugitive from New Mexico and Utah justice systems, nothing in the record before us substantiates this claim.

Moreover, the state has not sought dismissal of the appeal on this basis, as proposed in the dissent. See Hardy v. Morris, 636 P.2d 473, 474 (Utah 1981). The instant case is readily distinguishable from Hardy. Moya never escaped custody in Utah. Whether or not defendant is now absent from supervision is irrelevant, since we hold that parole supervision over him terminated by operation of law long before his alleged fugitive status arose.

Utah, i.e., that Utah authorities had escorted him to New Mexico where he remained in custody, AP & P requested that a no-bail, nationwide arrest warrant be issued for defendant, which the court authorized. On April 17, 1985, after learning of defendant's extradition to and custody in New Mexico, AP & P requested that the nationwide warrant be withdrawn and a "domestic," i.e., statewide, warrant be substituted. A few weeks later, the court withdrew the nationwide warrant and issued another warrant, authorizing defendant's arrest only if he was found in Utah.

Defendant was released from custody in New Mexico and shortly thereafter, on August 8, 1985, perpetrated a forgery in New Mexico. On September 23, 1986, he pled guilty to forgery and was granted probation by the New Mexico court in lieu of further incarceration. Defendant managed to estrange himself from the courts for the next two years, until AP & P learned of his return to Utah. On October 21, 1988, over four years after sentencing on the burglary conviction, and two and one-half years after defendant's Utah probation term had seemingly expired, AP & P filed its first affidavit in support of an order to show cause, seeking to revoke defendant's probation on the grounds defendant had failed to execute a probation agreement, failed to appear for probation, and failed to complete restitution payments.[2] AP & P filed an amended affidavit upon learning of defendant's forgery conviction in New Mexico. The amended affidavit also alleged commission of a burglary in Utah during the summer of 1988.

At a hearing on the order to show cause to revoke defendant's probation, held on November 10, 1988, the court stated it was revoking defendant's probation for the reasons stated in AP & P's amended affidavit, and reimposed the original prison term. Defendant was committed to the Utah State Prison, where he remained until February 16, 1989, when he was extradited for a second time to New Mexico. On February 3, 1990, defendant was granted parole on the initial Utah burglary charge. Defendant's parole period remains in effect through November of this year. Defendant's alleged violation of probation in New Mexico, subsequent commission of a burglary in Utah, and his probationary status in Utah remain unresolved.

Defendant continues to challenge the revocation of his Utah probation, claiming revocation was improper as the probation period had long since terminated by its own terms before probation was purportedly revoked. Meanwhile, on July 7, 1990, the trial court granted the state's motion seeking an order under Utah R.Civ.P. 60(a)[3] to "correct a clerical error" in the original sentence. Defendant's sentence thereafter clearly stated that the commencement and conditions of probation were to have been stayed pending defendant's return from New Mexico. Nonetheless, it is not altogether clear when, if ever, this revised order would have started his Utah probationary period of eighteen months, although the state suggested at oral argument it would not begin until defendant returned to Utah and signed a probation agreement.

## IMPOSITION AND TOLLING OF PROBATION

■ Defendant claims probation was originally imposed at sentencing on September 13, 1984. Defendant points out that unless it was imposed at that time, AP

---

2. Defendant claims that AP & P's tardy filing was improper under law which was clearly established at the time the action seeking probation revocation was commenced. *State v. Green*, 757 P.2d 462, 464 (Utah 1988). Because we reverse and vacate the order stemming from that filing on other grounds, we do not reach this claim.

3. Utah R.Civ.P. 81(e) provides that the Rules of Civil Procedure "shall also govern in any aspect of criminal proceedings when there is no other applicable statute or rule." An order under Utah R.Civ.P. 60(a) is the proper device for correcting inaccuracies in the memorializing of civil judgments. However, Utah R.Crim.P. 30(b), nearly textually identical to Utah R.Civ.P. 60(a), would have been the more appropriate vehicle to employ in this case. Because we hold the substantive sentencing order to be error, review of an order based on either rule results in the same conclusion.

& P's concerns over his not reporting for probation, its securing warrants as a result, and its ultimate efforts to have probation revoked would be quite anomalous. Given AP & P's course of conduct, defendant suggests the state should not now be heard to contend that probation was not "really" imposed at the time of sentencing. Defendant maintains that the court lost probation jurisdiction eighteen months after initial imposition of his sentence by operation of law.[4]

While conceding before this court that probation was *imposed,* effective upon the entry of sentence, the state counters that probation was never *executed,* arguing both that the court stayed probation and that defendant failed to sign a probation agreement.[5] Although the trial court later purported to dissolve the stay and impose probation, the state argues before this court that defendant remains subject to a full eighteen-month term of probation on the original burglary charge until he presents himself before AP & P officials and signs a probation agreement.[6] Acknowledging the conceptual difficulty of a parolee being placed on probation concerning the very charge which landed him in prison, the state asks that the order revoking defendant's probation be reversed and

the case remanded for execution of probation.

At the time defendant was sentenced, Utah Code Ann. § 77–18–1(10)(a) (Interim Supp.1984) provided:

> Upon completion without violation of 18 months probation in felony or class A misdemeanor cases, or six months in class B misdemeanor cases, the offender shall be terminated from sentence and the supervision of the Division of Corrections, unless the person is earlier terminated by the court.

This same provision was recently construed by the Utah Supreme Court in *State v. Green,* 757 P.2d 462 (Utah 1988). The Court stated that the Legislature holds the power to fix the limits of sentencing and probation. The statute establishes eighteen months as the normal maximum limit for probation in a felony case. The trial court's discretion to revoke probation may only be exercised within that limitation and upon following a particular procedure.[7] *See Smith v. Cook,* 803 P.2d 788, 790–91 (Utah 1990); *Green,* 757 P.2d at 464. *See also State v. Denney,* 776 P.2d 91, 92 (Utah Ct.App.), *cert. denied,* 779 P.2d 688 (Utah 1989). In *Green,* the defendant committed a violation prior to the expiration of his probationary period. However, the action to revoke Green's probation was not com-

---

**4.** Relying on *In re Flint,* 25 Utah 338, 71 P. 531 (1903), defendant also argues that the court lost jurisdiction when it effectively suspended his incarceration indefinitely by withdrawing the nationwide arrest warrant and substituting a domestic warrant. Defendant claims he was free from incarceration as long as he remained outside Utah, or while in Utah, avoided arrest. Because we hold the court had no jurisdiction upon expiration of the probation period stated in the court's initial order, we do not reach this issue.

**5.** The subtle distinction argued by the state revolves on whether probation was "stayed" at the time of imposition. The state now claims that the trial court imposed probation, but then immediately stayed the execution of probation and argues that the stay was never lifted. We address this argument as it relates to the Rule 60(a) order, *infra.*

**6.** The defendant also argues that insofar as the court relied on the tolling provision of Utah Code Ann. § 77–18–1(11)(b) (Interim Supp. 1984), such reliance was error and tolling did not apply. *See State v. Green,* 757 P.2d 462, 464

(Utah 1988). Although the state relied primarily on the tolling argument below, it has abandoned that position on appeal. Thus, the state is not contending that the initial incident report or the related domestic warrant tolled the expiration of the 18–month probationary period. Its point is that the 18–month period had not started to run when defendant was first sentenced. The state fails to explain how the incident report claiming a probation violation could have been properly filed or the related warrant properly issued if probation had not yet even commenced.

**7.** That procedure includes filing and service of an affidavit of probation violation prior to the time the probationary period has expired. *See Green,* 757 P.2d at 464; Utah Code Ann. § 77–18–1(9) (1990). Probation may not be retroactively revoked no matter how clear it subsequently appears that probation requirements were not followed, where no enforcement action is taken prior to the elapse of the term of probation.

menced until several months after the probationary period ended.

The Court held that the probationary period for a felony terminated by operation of law eighteen months after imposition, absent commencement of an action to extend or revoke probation filed within the probationary period.[8] Rejecting the state's argument that probation was tolled by the mere commission of a violation of probation terms, the Court stated:

> The statute requires that the offender "shall" be terminated from sentence if eighteen-months' probation is completed without violation. This strong mandate is not consistent with the State's position that the eighteen-month term is "tolled" when any violation occurs within the period.... This construction would obviate the certainty and regularity created by the statute and ignore the plain meaning of the word "terminate."

*Green,* 757 P.2d at 464. The statute under which defendant's probation was imposed simply does not contemplate tolling upon violation of probation terms where the violation is not properly acted upon in timely fashion.[9] We therefore hold that, unless the Rule 60(a) modification dictates another

result, the trial court's jurisdiction over defendant terminated at the end of the eighteen-month probation period. *See* notes 6 & 8, *supra.*

## RULE 60(A) CORRECTION OF CLERICAL ERROR

■ The state relies entirely on the trial court's Rule 60(a) order correcting the terminology of defendant's probation sentence to support its position that probation may have been imposed, but was never executed.[10] The state claims that probation was ordered "nunc pro tunc" on July 3, 1990, the date of the court's announcement of the Rule 60(a) order revising defendant's sentence, which was signed on July 26, 1990. The state further asserts that probation has still not yet been actually imposed because defendant has not yet returned to Utah for execution of probation, despite the fact that defendant has been incarcerated, granted parole, and released—all on the ground he violated the probation which was only very recently imposed "nunc pro tunc." [11]

Utah Rule of Civil Procedure 60(a) provides: "Clerical mistakes in judgments ...

---

**8.** In *Green,* the Court reserved the question of how far a probation revocation or modification action must proceed before the expiration of the 18 month period. However, in *Smith* the Court stated that a probationer who is not attempting to evade probation officers must be served with notice of the action within the probation period. 803 P.2d at 793. In this case, the incident report was filed within 18 months from defendant's original sentence; it was not served on defendant. The order to show cause on which the trial court ultimately acted was not even issued until two and one half years after the 18 months had expired. It alleged probation violations other than the one alleged in the incident report. Indeed, it alleged violations which occurred beyond the 18–month period.

**9.** In arguing that his probation expired eighteen months after imposition, defendant also notes that the state could have sought continuation of his probation by merely filing appropriate motions and affidavits within the proper time. The state has chosen not to respond to this and related arguments, relying instead on the trial court's subsequent revision of defendant's sentence. Ignoring AP & P's prior conduct suggesting probation started upon entry of sentence, i.e., its early incident report, the state endeavors

to move the starting date of defendant's probation forward in time. Its dilemma lies in articulating a theory that would both validate defendant's incarceration in late 1988 for probation violation and demonstrate that he is still subject to a term of probation that has not yet been executed.

**10.** The state's principal brief, while praiseworthy in its inclusion of pertinent citation to and quotation from the record, devotes only passing attention to defendant's primary arguments. The state relies almost exclusively on its position that each of defendant's arguments is moot when viewed with the benefit of the Rule 60(a) order revising defendant's original sentence.

**11.** In light of this extraordinary circumstance under the state's own view—a defendant reposing at the Utah State Prison for violation of probation which was ordered long after his parole and has yet to be imposed, i.e., executed— we believe that the state strains for a Latin gnat. Truly, the state's claim is not that the sentence was imposed "nunc pro tunc;" rather, the state's position reflects a "tunc pro nunc" reality. *See State v. Johnson,* 635 P.2d 36, 38 n. 1 (Utah 1981) (explaining "nunc pro tunc" in a similar context).

arising from oversight or omission may be corrected by the court at any time...." Neither defendant nor the state contests that the substantive purpose of Rule 60(a) of the Utah Rules of Civil Procedure is limited to curing errors in *accurately memorializing* a judgment. Substantive modifications to address subsequent developments are not authorized under Rule 60(a). We review Rule 60(a) orders under an abuse of discretion standard. *See Lindsay v. Atkin,* 680 P.2d 401, 402 (Utah 1984).

Defendant maintains that the Rule 60(a) order was inappropriate because no "clerical" error existed in the court's original judgment and sentence. *See Richards v. Siddoway,* 24 Utah 2d 314, 471 P.2d 143, 145 (1970) (rule allowing correction of clerical error does not provide for a judgment to be altered to state other than what the court intended to pronounce); *State v. Denney,* 776 P.2d 91, 93 (Utah 1989) (unambiguous criminal order cannot be later modified to match "what the judge may have intended"). Defendant supports this contention by repeating the argument that the same court which initially sentenced him to probation could not revoke probation which had not yet really been imposed. While this simple logic has obvious appeal, we nonetheless proceed with our review of the Rule 60(a) order as if its entry were a valid exercise of correcting a clerical error.[12]

The revised sentence, entered on July 26, 1990, states that

> Defendant is granted a stay of the sentence and placed on probation in the custody of this Court under the supervision

of the Chief Agent, Utah State Department of Adult Parole for a period of 18 months, said conditions of probation to be stayed until defendant is returned from New Mexico.[13]

As the *Green* Court noted, the Legislature proclaimed a "strong mandate" that probation shall terminate upon the expiration of the eighteen-month term, unless the state successfully seeks revocation or extension of probation within the appropriate period. *Green,* 757 P.2d at 464. Just as the Supreme Court in *Green* found automatic tolling of probation to be inconsistent with that strong mandate, *id.,* we find imposition of a stay of probation to be equally inconsistent. *Cf. Denney,* 776 P.2d at 92–93 (even though court may have intended to impose two eighteen-month probation periods, probation terminated by operation of law eighteen months after imposition, absent extension, revocation or unambiguously-stated consecutive terms of probation for different offenses). The result eschewed in *Green,* that defendant could be potentially exposed to an indefinite probationary term, would similarly be present where imposition of probation was indeterminately stayed.[14] Such a construction "would obviate the certainty and regularity created by the [probation] statute." *Green,* 757 P.2d at 464.

Finally, we note that defendant's probation, whether actually imposed or not, was revoked and defendant actually served time in prison for the original offense on the basis that he had violated probation. After

---

**12.** The very nature of a Rule 60(a) order suggests validity—the judge who initially pronounced judgment is merely restating his or her intent in order that it might be accurately reflected in the written record. Deferential review of the propriety of Rule 60(a) orders would be inappropriate, however, if the record unambiguously expressed a judgment contrary to that stated in the Rule 60(a) order of clerical revision. *See Denney,* 776 P.2d at 93.

**13.** At least in terms of defendant's first post-sentence return from New Mexico, even this 18 month period had already expired at the time the court "clarified" defendant's sentence. Defendant had returned to Utah at least by November 10, 1988, at which time he was incarcerated at the Utah State Prison for violation of proba-

tion, which, in the court's later view, had not yet been imposed, or at least executed.

**14.** The potential for abuse is obvious. A court could impose a probationary term of 18 months, with execution stayed for 10 years unless defendant should earlier violate conditions of the stay, which could simply track the provisions of probation. Such a defendant would be subject to an 11½ year de facto probation, a result clearly at odds with the pronouncements of our Legislature and Supreme Court.

Such potential for abuse is not present where a sentence which includes probation is stayed pending appeal, and nothing stated in this opinion about probation and stays has applicability to that more straightforward situation.

a term of incarceration, defendant was granted parole and released from prison under the supervision of parole agents. Once a person is subjected to the strong grasp of the law through parole it is inconsistent with the order of the system to reach out with yet another arm of the law and impose supervision under a probation scheme, which is essentially a pre-incarceration measure, not a post-release adjunct to parole supervision. Once the state has the parole "hook" in a defendant's life, further supervisory entanglement is somewhat superfluous.[15]

## CONCLUSION

We hold that defendant's probation terminated eighteen months following imposition, which occurred at the time of initial sentencing. The state's efforts to comply with statutory provisions for revoking or extending defendant's probation were not timely. Accordingly, the Rule 60(a) order is vacated and defendant's probation and parole are extinguished.[16]

GREENWOOD, J., concurs.

BENCH, Presiding Judge (dissenting):

I would dismiss this appeal.

In *State v. Tuttle*, 713 P.2d 703, 704 (Utah 1985), the Utah Supreme Court stated that "under the settled rule of *Hardy v. Morris*, Utah, 636 P.2d 473 (1981) [,] ... one who escapes places himself beyond the reach of the judicial system and any ruling cannot be enforced against him; therefore, he should not be allowed to pursue an appeal while out of custody." It is undisputed that Moya is presently a fugitive from the criminal justice system. Because Moya has placed himself beyond the reach of the judicial system, his appeal should be dismissed.

My colleagues erroneously proceed to decide Moya's appeal. This error is compounded by their holding that Moya's probation expired by its own terms eighteen months after the initial sentencing in September, 1984. The obvious flaw in the majority's analysis is that Utah Code Ann. § 77–18–1(10)(a) (Interim Supp.1984) did not unconditionally and automatically terminate any and all probationary periods at eighteen months. Section 77–18–1(10)(a) clearly stated that its effect was limited to those cases where the probationer did not violate probation. In the present case, Moya violated his probation, an incident report was filed by AP & P, and a bench warrant was issued; therefore, the eighteen-month limitation was tolled. *See Smith v. Cook*, 803 P.2d 788 (Utah 1990).

As a practical matter, I fear the majority's holding in this case will encourage other probationers to abscond until the statutory time after sentencing has elapsed. The probationers may thereby be free from the threat of incarceration and all conditions attached to their probation. This bizarre possibility will, in turn, lead trial courts not to even consider probation as an alternative at sentencing.

---

15. Under parole supervision, and subject to certain conditions, an offender may be immediately reincarcerated for a violation of parole terms, which may or may not be an independent violation of state law. Utah Code Ann. § 77–27–11 (1990). Probation supervision provides for comparatively less swift detention for violation of the probation agreement, requiring a showing of cause and a judicial hearing. Utah Code Ann. § 77–18–1(9) (1990).

16. The probation purportedly imposed years after entry of the initial sentence is vacated because defendant's actual period of probation had expired 18 months after initial sentence. Parole is terminated because it grew out of a term of imprisonment which was imposed for probation violations not acted upon prior to the expiration of probation. Since defendant had no probation to violate at that time, he had no probation to revoke and should not have gone to prison on that basis. Had he not gone to prison, he would have not been paroled.

The author senses being guilty in this case of "making the easy ones look hard," and fears that our labors at scholarly discussion, against a bizarre factual background, may promote more bewilderment than understanding. In simplest terms, our holding is this: There is no such thing as going to prison for violating conditions of probation which did not come into existence until release from prison on parole.