**2017 UT App 117**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LUIS ANTONIO GALINDO,
Appellant.

Opinion
No. 20140035-CA
Filed July 20, 2017

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 121905052

Ronald Fujino, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

VOROS, Judge:

¶1     Luis Antonio Galindo appeals the district court's decision
to sentence him to two consecutive prison terms. We affirm.

### BACKGROUND

¶2     The victim in this case (Victim) and her mother (Mother)
lived with Galindo. Mother and Galindo were romantically
involved. When Victim was 15 years old, Galindo started
engaging in regular sexual relations with her, which continued
until Victim was 17 years old. Although Victim said she had
feelings for Galindo at one point, she also "saw him as a father

figure," "wanted him to be [her] dad," and "wanted to be a family."

¶3    The State charged Galindo with two counts each of forcible sodomy and rape, all first degree felonies. Victim testified at the preliminary hearing. Pursuant to a plea agreement, Galindo pleaded guilty to two charges of unlawful sexual conduct with a 16 or 17 year old, third degree felonies. The judge who received Galindo's plea did not preside over the preliminary hearing.

¶4    After pleading guilty, Galindo waived the minimum time for sentencing and requested that the court sentence him immediately. He requested that his sentences run concurrently because he had already served 17 months in a maximum-security facility, he faced deportation, and he "accepted his responsibility for the conduct that he's guilty of and that he's pled guilty to." The State requested that Galindo's sentences run consecutively because, to "satisfy his sexual urges, he took them out on his step-daughter." The State argued that "[i]nstead of being a father figure and caring for [Victim] and supporting her, he took advantage of her emotional state." After the State concluded, Galindo asked for permission to address the court:

> [GALINDO]: Can I say something in my defense? No?
>
> THE COURT: This is the time to pronounce sentencing, I want you to discuss with [your counsel], certainly, before I pronounce sentencing.
>
> (Inaudible conversation)
>
> THE COURT: . . . Mr. Galindo . . . defense counsel has asked for concurrent. There's nothing further. Is that Mr. Galindo's request as well?

. . . .

[GALINDO]: Yes.

Defense counsel did not object. The court sentenced Galindo to consecutive prison terms, explaining that "because of the number of counts, the age of [Victim], and the particularly egregious fact that you were in the role of a step-parent, an authority figure in her home during her teenage years, that it is proper to sentence you consecutively."

## ISSUES AND STANDARD OF REVIEW

¶5    Galindo asserts three claims of error on appeal. First, he contends that the district court erred in basing its sentencing decision on the prosecutor's erroneous statement of fact, i.e., that Victim was Galindo's "step-daughter." Second, Galindo contends that the district court abused its discretion by sentencing him to consecutive prison terms without considering all the required factors. Galindo concedes that both issues are unpreserved and seeks review under the plain-error and exceptional-circumstances exceptions to our preservation requirement. Third, Galindo contends that he received ineffective assistance of counsel.[1]

¶6    "To demonstrate plain error, a defendant must establish that '(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error,

---

1. Galindo's first two claims of ineffective assistance of counsel pertain to the prosecutor's erroneous statement of fact and the district court's failure to consider the legally required sentencing factors. Because these claims can be resolved by Galindo's failure to establish prejudice, we address them together with Galindo's claims of plain error.

there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.'" *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (brackets omitted) (quoting *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993)). "If any one of these requirements is not met, plain error is not established." *Dunn*, 850 P.2d at 1209.

ANALYSIS

¶7     "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See also State v. Nelson*, 2015 UT 62, ¶ 12, 355 P.3d 1031. However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id. See also State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769 ("Because both deficient performance and resulting prejudice are requisite elements of an ineffective assistance of counsel claim, a failure to prove either element defeats the claim."). To prove prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶8     Plain error and ineffective assistance of counsel are analytically distinct concepts: the former alleges obvious error by the court, the latter deficient performance by counsel. But both types of challenges require the defendant to demonstrate

that the error or deficiency resulted in prejudice. *See State v. Kozlov*, 2012 UT App 114, ¶ 37, 276 P.3d 1207. "The prejudice analysis is the same under both a plain error and ineffective assistance of counsel framework." *State v. Munguia*, 2011 UT 5, ¶ 13, 253 P.3d 1082 (citation and internal quotation marks omitted).

¶9   The exceptional circumstances doctrine allows the reviewing court to reach an unpreserved issue in cases involving "rare procedural anomalies." *See Munguia*, 2011 UT 5, ¶ 11 (citation and internal quotation marks omitted). We apply the exception sparingly, "reserving it for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would have resulted in a manifest injustice." *State v. Nelson-Waggoner*, 2004 UT 29, ¶ 23, 94 P.3d 186.

## I. Prosecutor's Misstatement

¶10   Galindo contends that the district court plainly erred in basing its sentencing decision on the prosecutor's statement that Victim was his "step-daughter." Likewise, he contends that trial counsel performed deficiently in not objecting to the statement. Galindo also argues that exceptional circumstances exist because he "wanted to object to the State's misstatement, but was not allowed to do so."

¶11   Galindo cannot succeed on either a claim of plain error or ineffective assistance of counsel, because he cannot establish prejudice. Although Galindo and Mother were not married, Galindo lived with Victim for five years beginning when she was 12 years old. Galindo occupied a position of authority in Victim's life, and she "saw him as a father figure." And, during sentencing, the district court stated that Galindo was "*in the role* of a step-parent," as an "authority figure in her home during her teenage years." (Emphasis added.)

¶12 There is no indication that the district court actually believed Galindo to be Victim's step-parent by marriage. But even without a marriage, the record demonstrates that Galindo occupied a position of authority in Victim's life. Indeed, Victim "saw him as a father figure," "wanted him to be [her] dad," and "wanted to be a family." Galindo thus cannot establish that the prosecutor's statement that he was Victim's "step-father" prejudiced him. We see no "reasonable likelihood of a more favorable outcome for the appellant" had either Galindo or his counsel corrected the statement. *See State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (citation and internal quotation marks omitted). Accordingly, Galindo can establish neither that the district court plainly erred in relying on this statement nor that his trial counsel performed ineffectively by failing to object to this statement. *See Kozlov*, 2012 UT App 114, ¶ 37.

¶13 Galindo's argument under the exceptional circumstances doctrine similarly fails. He asserts that "the trial court told [him] that he could not speak in his defense to challenge the State's erroneous factual statements" and that "at that time . . . trial counsel failed to object." That is not how we read the record. After Galindo asked whether he may say something in his defense, the court responded, "This is the time to pronounce sentencing, I want you to discuss with [your counsel], certainly, before I pronounce sentencing." The court provided Galindo an opportunity to discuss his concern with counsel. Galindo did not renew his request when the court then questioned him about his sentencing preferences. This sequence of events—where Galindo was eventually given the opportunity to speak and counsel could have but did not object—"is not the kind of rare procedural anomaly contemplated by the exceptional circumstances doctrine." *See Provo City v. Ivie*, 2008 UT App 287, ¶ 6, 191 P.3d 841. Because this case is not an anomaly, we see no indications of manifest injustice here and therefore decline to review Galindo's claim under exceptional circumstances. *See State v. Alfatlawi*, 2006 UT App 511, ¶ 44, 153 P.3d 804.

## II. Legally Required Factors

¶14 Galindo next contends that the district court plainly erred by failing to consider his history, character, or rehabilitative needs in its sentencing decision and that his trial counsel was ineffective for failing to object when the court did not consider these factors. Galindo also argues that because he attempted to say something in his own defense at sentencing and was not allowed to do so, exceptional circumstances exist that warrant appellate review of the district court's sentencing decision.

¶15 We afford trial courts "wide latitude and discretion in sentencing." *State v. Killpack*, 2008 UT 49, ¶ 58, 191 P.3d 17 (citation and internal quotation marks omitted), *abrogated on other grounds by State v. Lowther*, 2017 UT 34. And we "presume that the district court made all the necessary considerations when making a sentencing decision." *State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985. "In determining whether state offenses are to run concurrently or consecutively, the court shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." Utah Code Ann. § 76-3-401(2) (LexisNexis 2012). "At the time of the sentence, the court shall receive any testimony, evidence, or information the defendant or prosecuting attorney desires to present concerning the appropriate sentence." *Id.* § 77-18-1(7) (LexisNexis Supp. 2016). And the absence of a presentence investigation report does not "mean that the district court failed to have all legally relevant information available for sentencing." *See State v. Lindsey*, 2014 UT App 288, ¶ 12, 340 P.3d 176.

¶16 Once again, Galindo's claims of plain error and ineffective assistance of counsel fail because he cannot establish prejudice. At sentencing, Galindo waived his right to a presentence investigation report and asked to be sentenced immediately. The court provided the State and Galindo a chance to present

information relevant to sentencing. Galindo explained that he had been in custody for 17 months in a maximum-security facility, faced deportation, and accepted responsibility for his conduct. When the court asked Galindo whether there was anything else he wanted the court to know, Galindo requested that the court sentence him immediately. The district court "received all of the information that both the prosecutor and [Galindo] wanted to present." *See id.* ¶ 13.

¶17    The district court based its sentencing decision primarily on the number of counts, Victim's age, and Galindo's status as an authority figure in her home during her teenage years. Galindo also received the benefit of a plea bargain reducing four first degree felony charges to two third degree felony charges. Galindo offers nothing to suggest that any mitigating evidence pertaining to his history, character, or rehabilitative needs existed. Accordingly, any claim that a consideration of these factors would have resulted in a different sentence rests on speculation.

¶18    Because Galindo cannot establish prejudice, he can establish neither plain error nor ineffective assistance of counsel in connection with the court's alleged failure to consider all legally required sentencing factors. *See State v. Kozlov*, 2012 UT App 114, ¶ 37, 276 P.3d 1207.

¶19    Galindo also argues that exceptional circumstances warrant appellate review of his unpreserved claim that the district court abused its discretion in sentencing him. He argues that he "should have been able to explain his history and rehabilitative needs to the court at that time." However, the district court gave Galindo the opportunity to present additional information beyond what his counsel presented in support of concurrent sentences. When asked whether there was anything more he wanted the court to know before the State presented its argument, Galindo responded only that he wished to be

sentenced immediately. For this reason and the reasons discussed above, *supra* ¶ 13, we decline to review Galindo's claim under exceptional circumstances. *See State v. Alfatlawi*, 2006 UT App 511, ¶ 44, 153 P.3d 804.

### III. Mitigating Factors

¶20 Finally, Galindo contends that he received ineffective assistance of counsel because his trial counsel did not present any mitigating evidence at the sentencing hearing.

¶21 For the reasons discussed above, Galindo cannot establish that his counsel's alleged deficient performance prejudiced him. *See supra* ¶¶ 11–12, 16–17. In support of her argument that Galindo be sentenced concurrently, Galindo's trial counsel explained that Galindo had been in a maximum-security facility for 17 months, faced deportation, and had accepted responsibility for his conduct. When asked directly whether there was anything he wanted the court to know, Galindo only asked to be sentenced immediately. Galindo has pointed to no evidence, nor can we find any in the record, to suggest that additional mitigating evidence existed. Consequently, he has not shown that there is a reasonable probability that, but for counsel's alleged error, "the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). Accordingly, his claim of ineffective assistance of counsel fails.

### CONCLUSION

¶22 For the foregoing reasons, the judgment of the district court is affirmed.

---